# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JOSEPH J. RASTOVSKI, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2687 |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Joseph J. Rastovski ("Mr. Rastovski"), has filed a motion for summary judgment and memorandum in support seeking reversal or remand of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") (doc. # 13: Pl.'s Mot. for Summ. J.; doc. # 14: Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.")). The Commissioner has filed a motion for summary judgment seeking affirmance of the decision denying benefits (doc. # 15: Commissioner's Mot. for Summ. J.; doc. # 16: Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.")). Mr. Rastovski also has filed a reply (doc. # 27: Pl.'s Reply Brief ("Pl.'s Reply")). For the following reasons, we deny Mr. Rastovski's motion for summary judgment and grant the Commissioner's motion to affirm.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On May 23, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 8).

## I.

Mr. Rastovski applied for DIB on March 19, 2013, alleging he became disabled on July 20, 2012 (R. 137, 191, 222) due to back problems, arthritis in left shoulder, high blood pressure, Hepatitis C, clogged artery and spots on lung (R. 168, 226). His date last insured was December 31, 2017 (R. 137, 222). Mr. Rastovski's claims were denied initially on June 10, 2013 (R. 164-67), and upon reconsideration on April 18, 2014 (R. 172-74). Upon timely request, a hearing was held before an Administrative Law Judge ("ALJ") on July 6, 2015 (R. 55-111, 137, 176). The ALJ issued a decision on July 31, 2015, finding that Mr. Rastovski was not disabled (R. 137-49). The Appeals Council then denied Mr. Rastovski's request for review, making the ALJ's ruling the final decision of the Commissioner (R. 1-6). *See* 20 C.F.R. §§ 404.981; *Loveless v. Colvin*, 810 F. 3d 502, 506 (7th Cir. 2016).

## II.

Mr. Rastovski was born on April 17, 1962 (R. 222). He testified that he worked for years as an electrician in a civilian capacity at Naval Station Great Lakes where he injured his back in 2008 and was placed on "light duty" periodically in 2008, 2010 and 2012 (R. 58). He resigned from his job on July 20, 2012 due to his physical condition (R. 58-59).

Mr. Rastovski applied for benefits with various government programs. On December 20, 2012, the U.S. Department of Labor, Office of Workers' Comp Programs ("DOL"), denied Mr. Rastovski's claim for compensation (R. 159). In addition, on August 26, 2014, the United States of America Merit Systems Protection Board affirmed the Office of Personnel Management's ("OPM") decision denying Mr. Rastovski's application for a Federal Employees' Retirement System (FERS) disability retirement (R. 277).

On July 12, 2012, Mr. Rastovski underwent a stress echocardiogram study wherein he exercised on a treadmill for 11 minutes and his functional capacity was above average (R. 397). In March 2013, Mr. Rastovski attempted a multi-drug regimen to eradicate Hepatitis C, but it had to be discontinued because "it was not working" (R. 383).

At the request of Panduranga Koya, M.D., on April 8, 2013, Mr. Rastovski underwent a spine lumbosacral five views that revealed he had degenerative lumbar spondylosis (natural deterioration of the spine – lower back – due to age and compression) (R. 445). Mr. Rastovski self-assessed his pain at an eight in his back and shoulder on April 8, 2013 and stated that it interfered with his sleep and work (R. 489-90). In Dr. Koya's April 9, 2013 Progress Notes, Mr. Rastovski was assessed with chronic back pain from degenerative joint disease of the spine; part of Dr. Koya's plan was to continue his current medication, and she referred him to Vocational Rehabilitation Unit ("VRU") for employment assistance because he was unemployed (R. 446). Additionally, in Dr. Koya's consultation request to VRU for Mr. Rastovski, she noted his standing and walking capabilities as "Non-restricted" (R. 469-70). And, Mr. Rastovski denied noticing any difficulty walking in the past 12 months in the progress notes dated April 9, 2013 (R. 484, 486). A VRU representative met with Mr. Rastovski on March 11, 2013 and discussed creating a USAjobs account (R. 471). When the VRU representative later spoke with him on April 17, 2013, Mr. Rastovski advised that he "now" had a sedentary work restriction due to his back and was interested in the VRU-IT/CWT program (*Id.*). However, the administrative record does not reflect such a restriction during this period of time from March 11, 2013 to April 17, 2013.

On May 20, 2013, Mr. Rastovski was evaluated by Jorge Aliaga, M.D., for an internal medicine consultative examination ("CE") (R. 447-52). They spent 35 minutes together and Dr. Aliaga indicated that he reviewed all the information sent to him by the Commissioner (R. 447).

3

Mr. Rastovski told Dr. Aliaga that he had experienced low back pain since April 2008, after injuring his back at work (*Id.*). He was placed on light duty but still could not perform the work (*Id.*). Mr. Rastovski said he experienced pain in his low back, and it radiated down his right leg (Id.). Mr. Rastovski stated that the pain reached a severity of "eight to ten over ten" with 10 being the maximum, and that the pain was so severe he had to take pain medication (*Id.*). Mr. Rastovski had received three epidural cortisone injections that he said only provided "temporary relief of his symptoms" (*Id.*). He also said that his pain "occasionally" reached below the knee (*Id.*). Dr. Aliaga also mentioned Mr. Ratovski's history of injury to his left shoulder, hypertension, Hepatitis C, and Mr. Rastovski's claims of calcium deposits in the coronary arteries and spots in the lungs (R. 448).

Dr. Aliaga noted that Mr. Rastovski reported that his activities of daily living ("ADLs") included sitting for 30 minutes, standing for 15 minutes, and walking half a block at a time before resting (R. 448). He could also carry a maximum of five to 10 pounds (*Id.*). Mr. Rastovski's medications were ibuprofen two to three times a day, as well as, Amlodipine Besylate and Benazepril Hydrochloride, both taken once a day (*Id.*).

On physical examination, Dr. Aliaga stated that Mr. Rastovski was alert, oriented and cooperative (R. 448). Dr. Aliaga found that Mr. Rastovski's left shoulder flexion was limited to 100 degrees and abduction to 90 degrees (R. 449). Additionally, his lower extremities had "full active range of motion in the hips, knees and ankles bilaterally (*Id.*). Mr. Rastovski had full active range of motion in his cervical spine; however, in his lumbosacral spine flexion was limited to 25 degrees and extension to 20 degrees (R. 450). Mr. Rastovski had a minimal limp that favored the right side, but he was able to walk more than 50 feet without the use of an assistive device (*Id.*). Dr. Aliaga also noted that Mr. Rastovski had no difficulty with heel-walk, toe-walk or tandem gait and his standing, sitting, single leg balance, and weight bearing were normal (*Id.*). Dr. Aliaga's

clinical impressions were (1) degenerative osteoarthritis of the Lumbosacral Spine, (2) degenerative osteoarthritis of the left shoulder, (3) hypertension, (4) Hepatitis C, (5) arteriosclerotic heart disease, and (6) lung spot (R. 450-51).

On June 7, 2013, state agency medical consultant, Francis Vincent, M.D., assessed Mr. Rastovski's residual functional capacity ("RFC") after a consultative examination ("CE") on May 20, 2013 (R. 112-18). Dr. Vincent opined that Mr. Rastovski could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday with limited reaching on the left side in front and overhead (R. 116-17). Dr. Vincent also observed that Mr. Rastovski's gait showed a minimal limp, and that he was able to walk more than 50 feet without the use of an assistive device, had no difficulty with heel-walk, toe-walk, or tandem gait, and his standing and sitting were normal (R. 118). This opinion was affirmed on reconsideration by Richard Bilinsky, M.D., on April 16, 2014 (R. 127-31). In addition, Dr. Bilinsky found Mr. Rastovski to be only "partially credible" in his self-assessment of his limitations (R. 128).

During his time in the Homeless Veterans Rehabilitation Program from June to December 2014, Mr. Rastovski attended mental health group therapy sessions and the numerous notes from these sessions described Mr. Rastovski as having "no acute distress," he was alert and oriented, his thought process was logical and linear, and he was "actively engaged" (R. 587, 591-92, 597-99, 600-01, 603-04, 605-06, 608, 617, 682-83, 694-95, 701-02, 704-05, 715-16, 742-43, 760, 763-64, 766, 771, 775, 781, 795, 800, 807, 810-11, 835-36, 846-47, 863-64, 875-76, 894, 947-48, 949, 959, 1016). Additionally, in a progress note dated June 11, 2014 by Karin Bloom, LCSW, Mr. Rastovski listed one of his goals as obtaining "gainful employment" (R. 622-23). In the Biopsychosocial Summary/Integrative Summary on June 12, 2014, it was noted that Mr. Rastovski did not currently meet criteria for a mental health diagnosis and that his mild to moderate depressed

or anxious mood stemmed from his "current situational stressors" (R. 610, 616). Mr. Rastovski also attended Recreational Therapy Group Counseling by participating in yoga, ceramics, and community reintegration activities such as attending a play, a Thanksgiving luncheon at the American Legion, and the Holocaust Museum (R. 753, 821, 859, 870, 952, 969, 989). Mr. Rastovski completed the program and was discharged to a Veterans Home on December 5, 2014 (R. 1005, 1007).

In a functional screening dated June 5, 2014, Mr. Rastovski reported that it was getting more difficult for him to walk by himself or keep his balance in the past 12 months (R. 662-63). During a PM&RS consultation note dated June 24, 2014 for a physical medicine rehabilitation consultation with Bharath Swaminathan, M.D., Mr. Rastovski rated his pain as seven out of 10 and stated that it "shoots to his right leg with numbness" (R. 593). Dr. Swaminathan noted that Mr. Rastovski was independent with ADLs and ambulation (R. 594). He was prescribed physical therapy twice a week for four weeks with hot packs, ultrasound, and a stretching and strengthening program (R. 594). On July 7, 2014, Mr. Ratstovski reported to Steven Dugan, D.O., that the pain in his right lower extremity limits his ability to get out of bed and have general mobility around the house and he has decreased sitting and walking time (R. 734). Mr. Rastovski was described as having a decreased tolerance for ADLs and decreased mobility overall (R. 735). Dr. Dugan's impression was that Mr. Rastovski had lumbar radiculopathy (a disorder that affects the nerve roots in the spine in the lower back) (R. 736).

On July 22, 2014, Dr. Swaminathan noted that Mr. Rastovski completed four physical therapy sessions and Mr. Rastovski stated that "it was helping" (R. 697-98). He rated his pain as a seven out of 10 and experienced intermittent shooting sensation to the legs (R. 698). In an August 12, 2014 physical therapy discharge summary, Mr. Rastovski reported a reduction in symptoms

6

and that he was able to self-manage (R. 777-79). On September 2, 2014, Mr. Rastovski underwent an MRI and the results showed multiple level degenerative disc disease of the cervical spine and the plan was to continue physical therapy (R. 831, 1092). In progress notes dated September 5, 2014, it was noted that Mr. Rastovski decided he was unable to work due to his medical issues and criminal background; however, he stated he would seek employment if his claims were denied (R. 843-44). On September 11, 2014, Mr. Rastovski stated that he felt much better with physical therapy (R. 827). On October 16, 2014, Mr. Rastovski stated that his pain interfered with his daily activities (R. 889). However, on October 20, 2014, Mr. Rastovski's physical therapist stated that his ADLs were fully independent (R. 877). At a November 7, 2014 appointment with Dr. Swaminathan, Mr. Rastovski reported that he felt great, his neck and low back pain improved, it was very tolerable at a two-three out of 10, and he had no radicular symptoms (R. 970-72). He was discharged from physical therapy and advised to follow up with neurology regarding his MRI (R. 971). On November 27, 2014, Mr. Rastovski stated that one of his goals was to obtain gainful employment (R. 983).

At Mr. Rastovski's Initial Assessment with the Indiana Veterans' Home on December 8, 2014, his symptoms were insomnia, back pain, joint pain, and anxiety (R. 1050). Mr. Rastovski was assessed with, among other things, chronic low back pain (R. 1051).

On December 17, 2014, Casey L. Reising, M.D., completed a Physical RFC Questionnaire for Mr. Rastovski (R. 576-78). Dr. Reising left the "frequency and length of contact" section of the RFC Questionnaire blank, and there is no indication in the administrative record indicating the extent of Dr. Reising's contact with Mr. Rastovski (R. 576). Dr. Reising diagnosed Mr. Rastovski with hypertension, Hepatitis C, chronic low back pain, borderline personality disorder, alcohol dependence, anxiety, left shoulder ort, lung modules, and substance abuse but with a "good"

prognosis (R. 576). Dr. Reising explained that Mr. Rastovski experienced chronic low back pain daily, intermittently ranging from a five out of 10 to a 10 out of 10 in severity that worsened by prolonged physical activity (*Id.*). Next, Dr. Reising opined that Mr. Rastovski's impairments lasted or could be expected to last at least twelve months and that his anxiety and personality disorder could affect his physical condition (*Id.*). Dr. Reising then opined that Mr. Rastovski would "occasionally" (up to one-third of a working day) experience pain severe enough to interfere with the attention and concentration needed to perform simple work tasks (*Id.*). Thereafter, based on Mr. Rastovski's functional limitations, Dr. Reising estimated that he could walk one mile before severe pain, he could sit for one hour before needing to get up, he could stand at one time for one hour before needing to sit down, he could sit and stand/walk for at least six hours in an eight-hour working day (with normal breaks), he needed to include periods of walking during an eight-hour work day for 10 minutes every 60 minutes, and he needed a job that permits shifting positions at will from sitting, standing and walking (R. 576-77).

Dr. Reising next opined that Mr. Rastovski would need to take unscheduled breaks zero to three times per day for an average of 10 to 15 minutes due to muscular aches and neuropathy down the right leg from degenerative disc disease (R. 577). Additionally, Dr. Reising checked off that Mr. Rastovski could "frequently" lift ten pounds but never 20 pounds, had no significant limitations with reaching, handling, or fingering, would experience "good days" and "bad days," and would be absent from work about two days per month (*Id.*). Finally, Dr. Reising wrote that she was concerned that Mr. Rastovski's psychological conditions, more so then his physical conditions, would limit him in the work environment and noted that he had borderline personality disorder with anxiety and a history of alcohol abuse, marijuana and cocaine abuse (*Id.*).

On May 22, 2015, Peter Simmons, M.D. ("Dr. Simmons"), performed a three view radiographs of the lumbar spine examination on Mr. Rastovski and found moderate-severe degenerative disc disease at L3-4, L4-5, and L5-S1 (R. 1067). On May 25, 2015, Mr. Rastovski was seen at Hill Clinic complaining of a knot in his lower back with pain in his backside and down into his thigh (R. 1080). He was treated with medication and referred to physical therapy where his rehabilitation potential was listed as "excellent" (R. 1080, 1084).

### III.

Mr. Rastovski appeared for a hearing before the ALJ on July 6, 2015 and was represented by an attorney (R. 55). He testified that he lived in a Veterans Affairs ("VA") domiciliary for homeless, indigent veterans in Lafayette, Indiana (R. 60). Mr. Rastovski rode public transportation to the hearing first taking Amtrak to Chicago and then a Metra train to the suburbs (R. 60). He did not have a driver's license, had three DUI's in his background and had been "clean" for one year as of the time of the hearing (R. 63).

Mr. Rastovski testified that prior to becoming disabled he was employed as an electrician by the Navy in a civilian capacity at the Naval Station Great Lakes (R. 58). He stated that he hurt his back in 2008 and was placed on "light duty" in 2008, 2010 and 2012 (*Id.*). Mr. Rastovski testified that he resigned from his job on July 20, 2012 due to his physical condition (R. 58-59). The "lifting, pulling, standing" would reaggravate his back and Mr. Rastovski testified he could no longer perform "that type of work physically" (R. 59). He stated the heaviest weight he could lift was between five and 10 pounds due to his back and a pinched nerve that caused a "very sharp pain from [his] back of [his] right side to [his] foot" (*Id.*).

Mr. Rastovski testified that he can walk for 60 minutes but then he needs to rest and he can stand for 15 to 30 minutes (R. 60). He stated he takes the following medications: Trazadone for

9

anxiety and to sleep, ibuprofen and painkillers for his pain, and steroids for a limited time (R. 62). Mr. Rastovski also testified that he finished physical therapy (*Id.*). He was being treated by the VA and received a 20 percent service-connected compensation from the VA for a left shoulder injury sustained during a training maneuver when he was in the air assault infantry and rappelled out of helicopters (R. 62-63). He stated his left shoulder "freezes up" and his arm would "go numb" when he was doing electrical work (R. 63).

Mr. Rastovski testified that he believes he was infected with Hepatitis C from an injection he received while in the Marine Corps. in the 1980's because they reused the same needles over and over again (R. 64). He was diagnosed with Hepatitis C in 1997 (R. 65).

Mr. Rastovski testified that he does not like crowds, being around groups of people, and conflict (R. 67, 69). Rather, he isolates himself in his room and spends a lot of time alone (R. 67, 69). At the VA, he stated that he gets along with some people while others he does not (R. 67-68). Mr. Rastovski was being treated at the VA for personality disorder, depression and anxiety (R. 68). He also attended group therapy sessions at the VA (*Id.*). He took Trazadone two to three times a week to help him sleep (R. 70). The cafeteria at the VA provided him with three meals a day and his room was cleaned once a week but he did do his own laundry (R. 67, 71).

Mr. Rastovski testified that he enjoyed walking in the forest and the woods by himself (R. 71-72). He would walk for an hour but did not walk the whole hour, rather he testified that he would sit down on benches or at a fishing pond (R. 72). He stated that he could only stand for 15 to 30 minutes due to his pain, then he needed to "sit down and relax" (R. 72-73). He then needed to sit or stretch for 10 to 15 minutes to feel relief (R. 73). Mr. Rastovski also noted that the physical therapy exercises he learned helped alleviate the pain he experienced from standing (*Id.*).

When Mr. Rastovski was working at the Naval Station Great Lakes, he received epidural injections to manage the pain (R. 73-74). However, when he left that job, Mr. Rastovski lost his insurance and no longer saw the specialist, Dr. Schell (Dr. Kaskel was his primary care physician) for epidural injections (*Id.*). Also, from April to July of 2012, he was only working "light duty," meaning he was a journeyman who trained apprentices in the trade (R. 74-75). During this time, Mr. Rastovski stated that he ran the crew and he could stand or sit but he did not have to lift anything (R. 75). He testified he did not know if he could do that job now because of "this anxiety and everything" (*Id.*).

Mr. Rastovski testified that he began feeling neck, shoulder and arm pain when he was working as an electrician and lifting items in 2012 (R. 76). He was diagnosed with a pinched nerve and degenerative disc disease and prescribed physical therapy to assist with the pain (R. 76-77). In 2014, Mr. Rastovski testified that the pain he felt going down his arm traveled to the end of his fingertips and his hand went numb (R. 77).

At the hearing, a medical expert ("ME"), Dr. Ashok Jilhewar, also testified (R. 81). Dr. Jilhewar's areas of specialty were internal medicine and gastroenterology, not orthopedics, neurology or pain management (R. 94). The ME never examined Mr. Rastovski; rather, his opinion was strictly based on the medical records (*Id.*).

The ME stated that Mr. Rastovski had the following severe physical impairments: chronic low back pain attributed to deteriorating, degenerative disc disease of lumbar spine resulting in right more than left neuroforaminal narrowing on the radiological studies (R. 81-82). The ME testified that the second impairment was degenerative disc disease of cervical spine without medical record documentation of cervical radiculopathy (R. 86). The ME also stated that Mr. Rastovski had a subsequent impairment of mild obesity that was non-serious and Hepatitis C that

is a "non-serious impairment although it is serious or significant from my perspective" (R. 87, 89). The ME testified that another impairment for which Mr. Rastovski suffered was psychiatric in nature, and was documented by a treating source. However, the ME stated that he is not a psychiatrist, and accordingly, he was not giving a specific opinion on Mr. Rastovski's psychiatric status (R. 89).

The ME testified that the only severe impairment from a physical perspective was degenerative disc disease of the lumbar spine (R. 90). The cervical spine degenerative disc disease was not a severe impairment because it did not have a one-year duration (*Id*.). The ME opined that Mr. Rastovski did not meet or equal Listing 1.04(a) because of the absence of neurological abnormalities on a consistent basis and the absence of intensity of pain management (R. 91). For example, the ME testified that there was no documentation of epidural steroid injections and surgical treatment was not recommended by the treating sources (*Id*.). Additionally, the ME testified that there was an EMG positive on the right S1 sacral radiculopathy, but it lacked one-year duration of its presence (*Id*.).

The ME also testified as to Mr. Rastovski's RFC and opined that his opinion was different from the treating source because the ME was looking for "continuous medical records lasting at least for 12 months" (R. 91). The ME opined that Mr. Rastovski was capable of medium to heavy work on July 4, 2012 with the treadmill capacity test (R. 92). The ME continued his testimony that he believed Mr. Rastovski was limited to "light physical capacity" work considering the presence of pain, meaning he was able to lift and carry up to 20 pounds occasionally, 10 pounds frequently, able to sit up to six hours in an eight-hour work day with normal breaks, and able to stand or walk up to six hours in an eight-hour work day (*Id*.). Additionally, the ME testified that Mr. Rastovski's pushing and pulling was limited by the lifting and carrying capacity and he was unable to work on

ladders, ropes and scaffolds (R. 93). The ME stated for Mr. Rastovski's upper extremity limitations, he did not have a one-year durational requirement for restriction of abduction in the left shoulder, therefore, he could frequently reach overhead (*Id.*).

Regarding Mr. Rastovski's pain management, the VE testified that based on his intermittent prescriptions of Tramadol and Hydrocodone, his doctors were treating him for "moderate pain" and the physical therapy documentation rated his pain as a four out of 10 meaning "mild pain" (R. 98). The ME testified that considering the "neurological and musculoskeletal system being almost normal, I expect a hypothetical person including claimant can do the light physical tasks" (R. 99).

A Vocational Expert ("VE") testified next (R. 100). The ALJ gave the VE a hypothetical of a person with the same age, education and skilled work background as Mr. Rastovski, who had the RFC for light work but could not climb ladders, ropes, or scaffolds or do overhead work with the non-dominant left upper extremity (R. 101). The VE testified that such an individual would be able to perform jobs such as an information clerk, routing clerk and mail clerk (R. 101-02).

Mr. Rastovski's attorney then added to the hypothetical that there should be no strict production quotas but that did not change the answer (R. 103). He then added to the hypothetical that there should not be any fast-paced changes or expectations such as in a rapid continual job (*Id.*). The VE testified that with an informational clerk position, there was no control over how busy it can be at any moment (R. 104). The acceptable amount of time to be off task net of breaks was 10 percent or six minutes per hour (R. 104-05). Mr. Rastovski's attorney then added to the hypothetical that the person was off task eight or nine minutes per hour exclusive of breaks (R. 106). The VE testified then that there would be no jobs at any unskilled level (*Id.*). Mr. Rastovski's attorney returned to the first hypothetical and added that there should not be "any necessarily and

sustained contact with public, coworkers, or supervisors, and only occasional interaction" (R. 107). The VE testified that would eliminate the information clerk and routing clerk but such an individual could still perform the mail clerk position (*Id.*).

## IV.

In his July 31, 2015 opinion, the ALJ followed the familiar five-step process for determining disability. At Step One, the ALJ found that Mr. Rastovski had not engaged in substantial gainful activity ("SGA") since July 20, 2012, the alleged onset date (R. 139). At Step Two, the ALJ found that Mr. Rastovski had the following severe impairments: L3-4, L4-5, and L5-S1 degenerative disc disease; degenerative left shoulder osteoarthritis; hypertension; and Hepatitis C infection (*Id.*). At this step, the ALJ also stated that Mr. Rastovski is obese, has a personality disorder, anxiety, cocaine addiction, and alcoholism which are nonsevere impairments because they did not cause more than minimal limitations on his ability to function (*Id.*).

The ALJ also determined that Mr. Rastovski's mental impairments were nonsevere because they did not cause more than minimal limitation in his ability to perform basic mental work activities and in doing so, the ALJ analyzed the "paragraph B" criteria (R. 139). The ALJ found that Mr. Rastovski experienced only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation of extended duration (R. 140). In making this finding, the ALJ noted that Mr. Rastovski rode Amtrak and Metra trains for two hours to attend the hearing, he sat "comfortably" for an hour during the hearing, did his own laundry and exercised regularly (*Id.*). Additionally, the ALJ stated that Mr. Rastovski attended a trip to the theater and participated in yoga, ceramics and other activities (*Id.*). Finally, the ALJ discussed that Mr. Rastovski received limited mental health treatment and recognized that the psychology group counseling notes from June to December 2014 described his

affect as euthymic with logical and linear thought process, appropriate thought content, organized behavior and he was coherent (*Id.*).

The ALJ determined at Step Three that none of the impairments – alone or in combination – met or equaled a listed impairment including Listings 1.04A and 1.02B (R. 140-41). The ALJ noted there was no evidence of an "inability to perform fine and gross movements effectively" as required by Listing 1.02 (R. 141). Furthermore, Listing 1.04A was not met because the medical evidence did not support that Mr. Rastovski's spinal impairment resulted in compromise of a nerve root or the spinal cord; there were not consistent findings of motor, sensory, or reflex loss; and there was no evidence that Mr. Rastovski was unable to ambulate effectively (*Id.*). In so finding, the ALJ gave great weight to Dr. Jilhewar, the medical expert (*Id.*).

The ALJ then found that Mr. Rastovski had the RFC to perform light work but was limited to no climbing of ladders, ropes and scaffolds and no overhead work with the non-dominant left upper extremity (R. 141). In reaching this RFC, the ALJ went through an extensive analysis of the medical evidence, opinion evidence, and other evidence.

The ALJ recounted Mr. Rastovski's alleged disability due to back problems, arthritis in the left shoulder, high blood pressure, Hepatitis C, a clogged artery, and spots on the lung (R. 141). He discussed Mr. Rastovski's hearing testimony including that he must rest after an hour of walking, he can stand for 15 to 30 minutes, and he liked to walk but tendonitis in the hip and arthritis prevented him from standing any length of time (R. 142).

The ALJ did not find Mr. Rastovski's statements regarding the intensity, persistence and limiting effects of his symptoms entirely credible (R. 142). The ME opined that Mr. Rastovski's only severe impairment was degenerative disc disease of the lumbar spine and that he did not meet

or medically equal Listing 1.04A, received no injections, and had not met a one-year durational requirement (*Id.*).

The ALJ recognized that Mr. Rastovski received some treatment for his back pain prior to his alleged onset date and that he reported a work injury in April 2008 resulting in complaints of pain (R. 142). His treatment included physical therapy (R. 143). In April 2013, an x-ray revealed degenerative lumbar spondylosis and his treating physician referred him to vocational rehabilitation for employment assistance (*Id.*).

Mr. Rastovski's consultative examination on May 20, 2013 was then reviewed by the ALJ and he discussed, among other things, Mr. Rastovski's complaints of pain, his minimal limp, his ability to walk more than 50 feet, his full range of motion of the cervical and lumbar spine but some limited range of motion of the lumbosacral spine, his intact cranial nerves, and 5/5 strength in all extremities except the left upper and right lower extremity (4/5 strength) (R. 143). The ALJ also discussed Mr. Rastovski's treatment for his back pain that he received at the VA Hospital (*Id.*). In December 2013, the ALJ noted Mr. Rastovski was given ibuprofen and a muscle relaxant for his pain complaints (*Id.*). His examination in June 2014 revealed tenderness, nonantalgic gait, and limited range of motion for which he was prescribed physical therapy (*Id.*). He also reported that his pain was intermittent and controlled with NSAIDs, and that he felt much better with physical therapy (*Id.*). An EMG performed on Mr. Rastovski in July 2014 was consistent with lumbar radiculopathy on the right, mild and active at S1 level, mild and chronic at L5, and no axonal loss (*Id.*).

The ALJ next discussed Mr. Rastovski's October 2014 examination by an orthopedist with a chief complaint of left shoulder pain (R. 143). An x-ray of his left shoulder revealed some mild degenerative joint disease while an x-ray of the cervical spine showed cervical spondylosis,

degenerative disc disease, and degenerative joint disease multiple levels of the cervical spine (*Id.*). After further examination, the orthopedist opined that Mr. Rastovski's symptoms were coming from his cervical spine and an MRI and physical therapy were recommended (R. 144). Physical therapy was discontinued in November 2014 after all goals were met (*Id.*).

The ALJ then reviewed Mr. Rastovski's report of being "bored" and "exercising a lot" in December 2014 (R. 144). In May 2015, the ALJ noted Mr. Rastovski was again referred for physical therapy, prescribed medication and was able to sleep with Trazadone (*Id.*). An x-ray on May 22, 2015 of the lumbar spine revealed moderate to severe degenerative disc disease L3-4, L4-5, and L5-S1 (*Id.*). The ALJ also recognized Mr. Rastovski's history of Hepatitis C noting that he could not complete the treatment because it did not work well (*Id.*).

Then the ALJ detailed Mr. Rastovski's treatment for alcohol dependence and substance abuse programs including admission to a Homeless Veterans Rehabilitation program on June 5, 2014 (R. 144). As part of this program, from June to December 2014, Mr. Rastovski attended group therapy and the counseling notes described his affect as euthymic with logical and linear thought process, appropriate thought content, organized behavior and he was coherent (*Id.*). The ALJ stated that Mr. Rastovski successfully completed the program and was discharged on December 5, 2014 (*Id.*).

The ALJ also explained his credibility assessment of Mr. Rastovski and stated that he considered all the factors in SSR 96-7p (R. 144). The ALJ found that Mr. Rastovski had some limitations but continued to "engage in a wide range of daily activities" such as riding the Amtrak and Metra trains for two hours to attend the hearing, sitting comfortably at the hearing, doing his own laundry, exercising regularly, yoga, ceramics and an outing to the theater (R. 144-45). The ALJ also discussed that Mr. Rastovski's treatment records since the alleged onset date indicated

he was collecting unemployment, he was employed in temporary work, and he was looking for work (R. 145). Thus, the ALJ concluded this indicated Mr. Rastovski "did not view himself as completely disabled" (*Id.*). Additionally, the ALJ stated that he considered the treatment records and found that they did not support the degree of limitation alleged by Mr. Rastovski (*Id.*). The ALJ acknowledged that Mr. Rastovski suffered an injury in 2008 but noted that he did not stop working and did not allege disability until July 2012, thus working for several years following the injury (*Id.*).

Treatment for Mr. Rastovski's back was also described by the ALJ as "limited and generally conservative" (R. 145). The ALJ discussed that Mr. Rastovski underwent an epidural and physical therapy but surgical management was not recommended, and the treatment records suggested improvement with physical therapy (*Id.*). The ALJ recognized that the objective testing did support some degree of limitation as the x-rays and MRI revealed degenerative disc disease. However, the ALJ found that the limited and conservative treatment indicated his impairment was not as limiting as alleged (*Id.*). The ALJ also discussed Mr. Rastovski's long history of a left shoulder injury but found that he was able to work for many years after that injury, he could use the computer, and engaged in a wide range of daily activities (*Id.*).

The ALJ next directed his attention to Mr. Rastovski's consultative examination where he exhibited 5/5 grip strength bilaterally and his grasp and finger manipulation was intact (R. 145). The ALJ stated that he accommodated Mr. Rastovski's left shoulder injury with a limitation to no overhead work with the non-dominant left upper extremity (*Id.*). Furthermore, the ALJ noted that Mr. Rastovski has Hepatitis C with normal liver function (*Id.*). The ALJ also considered Mr. Rastovski's obesity in combination with all the impairments and found no evidence that it further limited him from a range of light exertional work (*Id.*). Therefore, to the extent Mr. Rastovski

alleged additional limitations from his impairments, the ALJ found him "not credible based on his ability to engage in a wide range of daily activities, his improvement limited and conservative treatment, and other factors discussed" in the ALJ's decision (*Id.*).

The ALJ recognized that Mr. Rastovski received some mental health treatment, but the examination findings were consistently normal, the treatment was generally only when he was inpatient at the VA hospital, and he was engaged in a wide range of activities at that time (R. 145). Regardless, the ALJ found that the jobs cited in his opinion were unskilled jobs with no numerically strict time-sensitive production quotas and except for one job, no more than occasional interaction with others (*Id.*).

The ALJ then discussed the weight he gave to the opinions of the various medical personnel. First, he gave "great weight" to the opinion of the ME, Dr. Jilhewar, because he reviewed all the evidence of record, gave an opinion consistent with the records, and is an expert in disability review and determinations (R. 145-46). Second, the ALJ gave "some weight" to the State agency physicians' opinions because they were generally consistent with the RFC assessment, however, additional records were added at the hearing level (R. 146).

Next, the ALJ gave "little weight" to the opinions of the treating and examining physicians who opined that Mr. Rastovski had additional limitations (R. 146). The ALJ discussed that Dr. Kaskel referred to his treatment records and opined that Mr. Rastovski was advised not to lift anything over five pounds; however, those records pre-dated Mr. Rastovski's alleged onset date when he continued to work (*Id.*). The ALJ also pointed out that the treatment records were generally normal with 5/5 strength throughout, normal gait, intact sensation, and other normal findings (*Id.*). He thus gave the opinion "little weight" because it was unsupported by the records and was prior to the alleged onset date (*Id.*).

The ALJ considered "numerous statements" that Mr. Rastovski could perform only light duty work (R. 146). A May 2012 opinion stated Mr. Rastovski could perform restricted work with walking and standing as tolerated (*Id.*). The ALJ found these to be "vague opinions," did not give the "function-by-function" limitations necessary to determine Mr. Rastovski's RFC assessment, and were prior to the alleged onset date (*Id.*). The ALJ gave these opinions "no weight" (*Id.*).

The ALJ next considered the VA finding that Mr. Rastovski had 20 percent service connection disability related to his left shoulder, but the ALJ found that was not work preclusive and did not give functional limitations necessary to determine Mr. Rastovski's RFC assessment (R. 146). The ALJ asserted that the VA also stated that Mr. Rastovski could lift 10 pounds, had no restrictions in sitting, standing, walking, handling/finger dexterity, and reaching/arm extension (*Id.*). The ALJ found that the opinion that Mr. Rastovski could lift 10 pounds was unsupported by the record, it was unclear who gave this opinion and it was likely not from a medical source but rather with regards to vocational rehabilitation (*Id.*).

In his opinion, the ALJ also pointed out that the United States Merit System Protection Board for the Office of Personnel Management (OPM) denied Mr. Rastovski disability retirement on August 26, 2014 by upholding the decision of the Administrative Judge that the spine condition did not prevent Mr. Rastovski from duties as an electrical worker (R. 146). According to the VE, electrician duties is a medium exertion position that is skilled (*Id.*). Thus, the ALJ surmised that the Administrative Judge in the OPM matter found that Mr. Rastovski is "capable of being on his feet for at least 6 hours a day and lifting as much as 50 pounds occasionally" (R. 147). In the ALJ's estimation, this Administrative Judge also believed that Mr. Rastovski was capable of understanding, remembering and carrying out complex job instructions, and appropriately relating to co-workers, supervisors and people in the public sector – akin to Mr. Rastovski being able to

20

perform past relevant work (*Id.*). Similarly, the ALJ explained that the United States Department of Labor, Office of Workers' Comp Programs ("DOL") also denied Mr. Rastovski benefits on December 20, 2012 finding the evidence was insufficient to find he had a "compensable injury" (*Id.*). The ALJ found that these two decisions by the OPM and DOL were "quite revealing" because while they have their own unique issues that differ to a degree from disability considerations, they too looked at the medical evidence and evaluated Mr. Rastovski's functional status (*Id.*). The ALJ further found these findings important because they acted as a "solid endorsement" of the ALJ's decision and should "quell any contention that this outcome is erroneous" (*Id.*).

The ALJ then considered an October 2014 statement that Mr. Rastovski should perform no heavy lifting but could do manual traction of 20 to 30 pounds as tolerated (R. 147). The ALJ found this was generally consistent with the RFC assessment and was generally consistent with the evidence of record, which revealed limited and conservative treatment (*Id.*).

Finally, the ALJ gave "little weight" to the opinion of Dr. Reising who opined that Mr. Rastovski was limited to a range of sedentary exertional work with the ability to stand/walk at least six hours a day but that he would require regular breaks and would miss about two days of work a month (R. 147). The ALJ also pointed out that Dr. Reising's concern was Mr. Rastovski's psychological conditions more so than his physical conditions, which indicated to the ALJ that Mr. Rastovski's physical impairments were not as limiting as alleged (*Id.*). Additionally, the ALJ stated that Dr. Reising cited only mild tenderness and normal neurological examination in support of her findings which was inconsistent with the 10-pound lifting limit (*Id.*). The ALJ gave "little weight" to this opinion because it was contrary to the treatment records; Mr. Rastovski received limited mental health treatment and the examination findings were consistently normal at the VA

Hospital, he was able to engage in many activities, which was inconsistent with the finding that he would be absent from work about two days per month (*Id.*).

The ALJ concluded that the RFC was supported by the medical findings, nature and frequency of treatment, the claimant's activities, opinion evidence, and other factors discussed in his opinion (R. 147). The ALJ stated that he accommodated Mr. Rastovski's impairments by limiting him to a range of light exertional work and to the extent he alleged greater limitations, Mr. Rastovski's testimony was not fully credible (*Id.*).

At Step Four, the ALJ found that Mr. Rastovski was unable to perform any past relevant work (R. 148). However, at Step Five, the ALJ found there were significant jobs that existed in the national economy that Mr. Rastovski could perform (*Id.*). Therefore, the ALJ held that Mr. Rastovski was not disabled (R. 149).

## V.

We review the ALJ's decision to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alvarado v. Colvin*, 836 F.3d 744, 747 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Mr. Rastovski argues that remand is warranted for four reasons: (1) substantial evidence does not support the ALJ's finding that Mr. Rastovski could stand for uninterrupted intervals of two hours; (2) substantial evidence does not support the ALJ's finding that Mr. Rastovski could

walk for uninterrupted intervals of two hours; (3) the ALJ's evaluation of Mr. Rastovski's activities are not consistent with Seventh Circuit precedent; and (4) the ALJ unreasonably relied on his finding that Mr. Rastovski did not himself believe that he was completely disabled (doc. # 14: Pl.'s Mem. 4-15). We address each argument in turn.

### A.

Mr. Rastovski first argues that substantial evidence did not support the ALJ's finding that he could stand and walk for uninterrupted intervals of two hours.[3] Yet, Mr. Rastovski acknowledges that the ALJ did not actually make such a finding. Rather, Mr. Rastovski states that "because the ALJ did not specify expressly how long Mr. Rastovski could stand at one time, the ALJ implicitly found that Mr. Rastovski could do all the standing [and walking] that the 'full range' of 'light' work requires." (doc. # 14: Pl.'s Mem. at 4, 11). As the claimant, Mr. Rastovski shouldered the dual burdens of production and persuasion that he could not stand or walk for two hours at a time. 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"); 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports [his] claims of disability").

At the threshold, we wonder about Plaintiff's contention that the ALJ "implicitly" found that Plaintiff could stand or walk for two hours without a break on the ground that this capability is required for full range of light work. SSR 83-10 says that light work requires "a good deal" of walking or standing, which the regulation then says involves standing or walking "off and on, for

---

[3] Although Mr. Rastovski addresses his "standing" and "walking" arguments separately, we will address them together as they overlap.

a *total* of approximately 6 hours of an 8-hour workday" (emphasis added). We see nothing in the regulation requiring an ability to walk or stand for uninterrupted two hour stretches of time. The support Plaintiff cites for that interpretation is SSR 96-9p, which says sedentary work requires an ability to *sit* for "approximately 2-hour intervals." Plaintiff offers no case authority or other basis to import from the definition of sedentary work a requirement of light work.

That said, the ALJ's finding that Plaintiff has an RFC that permits light work is supported by substantial evidence. The ALJ thoroughly reviewed the evidence of record and found that the RFC was supported by the medical findings, nature and frequency of treatment, Mr. Rastovski's activities, opinion evidence and other factors (R. 147). The ALJ limited Mr. Rastovski to light exertional work with exceptions not relevant to standing or walking (*Id.*). In doing so, the ALJ gave great weight to the opinion of the ME, Dr. Jilhewar, who opined that Mr. Rastovski could perform "light" work (R. 92), because he was the only person who reviewed all the evidence of record and his opinion was consistent with that evidence (R. 145-46). The Seventh Circuit has held that an ME's opinion, buttressed by the opinion of state agency consultants, is an "adequate evidentiary foundation for the [RFC] finding." *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005); *See also Colangelo v. Berryhill*, No. 15 C 6777, 2017 WL 3453375 at 6 (N.D. Ill. Aug. 11, 2017). The ALJ also gave "some weight" to the opinions of the State agency physicians whose opinions were generally consistent with the RFC assessment (R. 146). Additionally, the ALJ looked to the decisions by the OPM and DOL that both denied Mr. Rastovski benefits. The ALJ recognized that while each agency had their own unique issues that differ to a degree, they both looked to the medical evidence and evaluated Mr. Rastovski's functional status (R. 146-47). The OPM found Mr. Rastovski was capable of being on his feet for at least six hours a day (*Id.*), which

is required to perform light work. For all these reasons, Dr. Jilhewar's opinion was substantial evidence in support of the ALJ's decision.

The ALJ reviewed other evidence but found that it did not contradict Dr. Jilhewar's opinion. The opinions of the treating and examining physicians, such as Dr. Kaskel, were from a time period prior to Mr. Rastovski's alleged onset date and during a time when he continued to work (R. 146). The ALJ also considered the opinion of Dr. Reising (a doctor at the Veteran's Home), and afforded it "little weight" because it was contrary to the treatment records (*Id.*). The ALJ discussed Mr. Rastovski's "limited and generally conservative" treatment for his back – he underwent epidural and physical therapy, but surgical management was not recommended (R. 145). The physical therapy records suggested improvement (*Id.*). The ALJ did also acknowledge that the objective testing supported some degree of limitation due to degenerative disc disease hence the RFC of light work with exceptions (*Id.*). Mr. Rastovski's examination revealed slightly decreased light touch sensation and 4/5 grip strength but the ALJ noted he was still able to use the computer and engaged in a wide range of daily activities (*Id.*).

The ALJ discussed Dr. Reising's opinion that Mr. Rastovski was limited to a range of sedentary exertional work with the ability to stand/walk at least six hours a day but would require regular breaks and would miss about two days of work a month (R. 147). The ALJ pointed to Dr. Reising's statement that she was more concerned with Mr. Rastovski's psychological conditions than his physical conditions, which indicated to the ALJ that the physical impairments were not as limiting as alleged (*Id.*). The ALJ also reasoned that Dr. Reising cited only mild tenderness and normal neurological examination, which the ALJ found to be inconsistent with limitations on lifting 10 pounds.

25

The ALJ also discussed Mr. Rastovski's limited mental health treatment. Mr. Rastovski testified he did not know if he could perform his previous job as an electrician now because of "this anxiety and everything" (R. 75). Similarly, in the RFC completed by Dr. Reising she stated that she was concerned that Mr. Rastovski's psychological conditions, more so then his physical conditions, would limit him in the work environment (R. 577). However, the ALJ noted that the examination findings were "consistently normal" when he received care at the VA (R. 147). Other than the group therapy sessions at the VA, there was little to no mental health assessment of Mr. Rastovski. And as the ALJ stated, those findings were consistently normal (R. 145).[4]

In sum, the ALJ drew a logical bridge from the evidence before him to his conclusion that Mr. Rastovski had an RFC of light work with certain exceptions. We conclude that the ALJ's RFC is supported by substantial evidence.

**B.**

Next, Mr. Rastovski challenges the ALJ's RFC assessment of light work by arguing that the ALJ violated Seventh Circuit precedent regarding the relevance of claimant's ADLs (doc. # 14: Pl.'s Mem. 13); (R. 141). We disagree.

The ALJ noted the "many activities" in which Mr. Rastovski engaged, which the ALJ found to be inconsistent with his asserted limitations. Mr. Rastovski testified to, and the treatment records showed that, Mr. Rastovski engaged in numerous daily activities such as walking in the forest, doing laundry, using a computer, exercising regularly, attending the theater, and participating in yoga and ceramics classes. The ALJ also pointed out that Mr. Rastovski was able to navigate both the Amtrak and Metra trains for two hours to arrive at the hearing, and that he sat

---

[4] The group therapy sessions described Mr. Rastovski as having "no acute distress," alert and oriented x4, logical and linear thought process, and "actively engaged" (R. 587, 591-92, 597-99, 600-01, 603-04, 605-06, 608, 617, 682-83, 694-95, 701-02, 704-05, 715-16, 742-43, 760, 763-64, 766, 771, 775, 781, 795, 800, 807, 810-11, 835-36, 846-47, 863-64, 875-76, 894, 947-48, 949, 959, 1016).

comfortably at the hearing (R. 144-45). The ALJ stated that Mr. Rastovski was collecting unemployment, employed in temporary work, and was looking for work during the relevant time period (R. 145). The ALJ also acknowledged that Mr. Rastovski suffered an injury in 2008, but was able to continue working for several years thereafter as he did not stop working and allege disability until July 2012 (*Id.*).

While the Seventh Circuit has found that "critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance," *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), in this case, the ALJ adequately explained his reasoning for finding Mr. Rastovski to be not credible based not only on his wide range of daily activities but also his improvement and limited and conservative treatment and other factors. *See Kleven v. Colvin*, 675 Fed. Appx. 608, 611 (7th Cir. 2017); (R. 145). Furthermore, while Mr. Rastovski complains that looking for work and working do not preclude a finding of disability (doc. # 14: Pl.'s Mem. 15), an ALJ is entitled to consider those activities in the disability analysis. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *see also Berger v. Astrue*, 516 F. 3d 539, 546 (7th Cir. 2008); (doc. # 16: Def.'s Mem. 3). We find no error in the ALJ's consideration of these activities, and with Mr. Rastovski's other ADLs, in determining his RFC.

## C.

Finally, we conclude that the ALJ adequately justified his decision to discredit Mr. Rastovski's account of his symptoms. We must afford an ALJ's credibility determination special deference and will only reverse it if the claimant can demonstrate that the determination was "patently wrong." *Cooley v. Berryhill*, No. 17-2239, 2018 WL 3323134 *4 (7th Cir. July 6, 2018)

(holding ALJ adequately justified decision to discredit plaintiff's account of her symptoms where plaintiff testified about her need to alternate between sitting and standing and that she could only stand for 30 minutes at a time), *quoting Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Mr. Rastovski argues that the ALJ improperly relied on Mr. Rastovski's testimony that he did not view himself as "completely disabled," because he was collecting unemployment, employed in temporary work, and he was looking for work (doc. # 14: Pl.'s Mem. 14); (R. 145). However, the Seventh Circuit is "not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability." *Schmidt*, 395 F.3d at 746.

In making his credibility assessment, the ALJ pointed to Mr. Rastovski's wide range of daily activities such as his ability to ride the Amtrak and Metra trains for two hours to the hearing, sitting comfortably at the hearing for about an hour, doing his own laundry and exercising regularly (R. 144-45). The ALJ also justified his findings with his discussion of the treatment records that indicated Mr. Rastovski was engaged in outings like a trip to the theater, activities like yoga and ceramics, and other activities (R. 145). *Kleven*, 675 Fed. Appx. at 611. The ALJ also noted that the treatment records indicated Mr. Rastovski was collecting unemployment, that he was employed in temporary work, and he was looking for work (*Id.*). Additionally, the ALJ found that the treatment records did not support the degree of limitation that was alleged and noted that Mr. Rastovski suffered an injury in 2008 but he did not stop working or allege disability until July 2012 (*Id.*). Thus, he was able to work for several years following his injury. As in *Schmidt*, the ALJ regarded Mr. Rastovski's unemployment experience as one of the many factors adversely impacting his credibility. 395 F.3d at 746.

We look only to whether the ALJ's credibility determination was patently wrong. *Cooley*, 2018 WL 3323134 at 4, *citing Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("We cannot …substitute our judgment for the ALJ's when considering the weight of the evidence, and [the plaintiff] must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong.") Mr. Rastovski's testimony, activities of daily living, and treatment records demonstrate that it was not.

## CONCLUSION

For the foregoing reasons, Mr. Rastovski's request for reversal or remand (doc. # 13, 14) is denied, and the Commissioner's motion for summary judgment (doc. # 15) is granted. We affirm the ALJ's decision. The case is terminated.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED:  October 16, 2018**